Council, before you start, can I just give you all a hypothetical, and you can organize your arguments however you want, but I'm trying to understand how this initiative works. So the hypothetical is, let's assume the Republicans have a convention in which two candidates, C, conservative, M, moderate, run against each other. C prevails, and C becomes the Republican nominee to enter into the primary. Puts himself on the ballot, would be the official Republican nominee. M, the moderate, decides he's going to enter the, or she, is going to enter the primary. How would that person be designated on the ballot? And W, a wild off-the-wall person who decides, also wants to be shown as a preference for the Republican Party, would be in the primary as well. So you have three, two official Republicans, two party Republicans, one Republican who is the nominee of the process, through the Republican process, one who lost but can still get into the primary, and then one who wants to show him or herself as preferring the Republican Party. So you've got those three, could be Democrats, but I'm just picking Republicans. So as you discuss this initiative, I'd like to know how they would show up on the ballot in terms of the primary. What would be their party identification? As the statute is written? As is written, yeah. However you're, however it's written, interpreted by regulations, whatever. Okay. Thank you, Your Honor. Good morning. My name is Tom Ahern. I represent the Washington State Grange. And I'd like to start with a quote of one of the short, memorable answers from the Watergate hearings, because it highlights the fundamental reason why the statute in this case, and it's reflected in the answer I'll give to the judge's question, Judge Fisher's question, the statute in this case is constitutionally different from the statutes in Reed and Jones. Senator Ervin had just commented that the term, quote, foreign intelligence activities, close quote, in his federal statute did not apply to the burglary that John Ehrlichman was testifying about. And John Ehrlichman asked, how do you know that, Mr. Chairman? And Senator Ervin replied, because I can understand the English language. It's my mother tongue. Your Honors, the voters of the state of Washington can understand the English language. It's their mother tongue. And the statute in this case expressly says that the abbreviation on the ballot after a candidate's name is that candidate's political party preference. And English language dictionaries confirm that preference means, like the word prefer, to like more than the others, to like better. Thus, under the plain language of this statute as written, the abbreviation on the ballot means nothing more and nothing less than the candidate's disclosure of what political party he or she likes better. This is therefore not a case like Reed, where the statute provided that the abbreviation on the ballot identified the political party of which that person was a candidate and determined whether that person would take the Democrats' spot on the November ballot or the Republicans' spot on the November ballot. This case isn't like Jones, where the abbreviation on the ballot identified the party of which that person would be the nominee, that's what the statute said, the nominee on the November ballot. The voters of the state of Washington understand the English language and the word preference. And the First Amendment does not prohibit or make unconstitutional voters being of a top two primary system. You know, what other piece is on the ballot? What other piece is on the ballot? The candidate's name, Your Honor, and what's crucial. Well, yeah. So the candidate's name and his preference is on the ballot, nothing else, right? Yes, Your Honor. So the political parties are frozen out of any ability to control what someone else self-selects as a preference. Your Honor, preference is the ---- I mean, that's true. Whether it's constitutionally wrong or not is a different issue. But you agree that that's correct. And I guess part of my irritation is the frozen out terminology. It presumes ---- Well, they are. They can't ---- there's no way a political party can say C is not our choice. You're right, Your Honor. And that's precisely the issue under the statute. The statute is the candidate says who he or she prefers. It isn't the party saying who the party prefers. There's no constitutional right of a party to have the person they nominate on the ballot. Oh, so what's the authority for that? Well, that's what the Timmons case and the Klingman case most recently have been talking about. Parties can't dictate what is on the ballot. The ---- That's not the case. I don't disagree with that. What constitutional authority is there for the proposition that a party has no right to nominate someone to be on a ballot? Oh, Your Honor, we're talking about two completely different things. Well, that's part of the issue, isn't it? Well, the party has a right to nominate. And, in fact, in this particular case, when the top two statute was still in effect, the Republican Party and the Democrat Party nominated their own people. But it's pyrrhic because it doesn't show up on the ballot. There's no constitutional right of a party to have the label, this is our nominee, close parens, on a ballot. There's no basis in the First Amendment for that. And all this statute does, in Your Honor's example, if the party political ---- let's say the Republicans want to nominate Mr. C as their nominee, they are free to do that. But they do not have a First Amendment constitutional right to require the State to put on the ballot, Mr. C is our nominee. Well, but the implications of Jones are that they do have the authority to nominate who will be able to be the spokesperson banner carrier for their party and to have that person placed on the primary ballot. That was the rough and general hypothetical that Justice Scalia came up with. So if what you're telling me is that Candidate C, who is that nominee in my hypothetical, carries after his or her name the designation R, but so do Candidates M, who lost in that Republican process, and W, who was never a part of it, isn't even a member of the party, also carry the designation R, you're saying there's no constitutional authority for prohibiting them from adopting the ---- and being identified on the ballot by the designation R. Is that it? Yes. And let me make two points. One, it's essential to remember what the statute in Jones said. The statute in Jones said that the abbreviation on the ballot identified the party of which the person would be the nominee on the November ballot, expressly provided that the not the Republican Party nominee in November would be the person who got the most votes that had the R after their name. And how does the voter know that among the R's only C is the true Republican nominee per their nominating system? There is no constitutional right of a political party. You're not answering my question. How would the voter know? I didn't ask whether there's a constitutional issue. I just, in other words, I want to ---- you started with a quote, and that, you know, people understand the language. What's the language on the ballot that tells them how to distinguish between the three candidates designated R? There is no language on the ballot that distinguishes between someone who is the Republican Party nominee and someone who is not. The clear language of this statute says all that abbreviation states is what's the prefers. That's the plain language of the statute as written. And what the political parties here want to do is they want this Court to rewrite the word preference, which is what's in the statute, to instead say nominee, which was in the California statute, or instead say member or something like that. And then once the Court has rewritten the statute to strike out preference and say member or nominee, rule it unconstitutional. Well, you see, the problem to me is that you're quite right. This statute doesn't say this is going to be the party nominee. It doesn't say that. But the effect of it is precisely the same and worse, because you're running for partisan office and you allow candidates to self-identify themselves in a partisan way, and yet there is no opportunity for the party whose name is being used to say in the same breath, uh-uh, not our nominee. So you basically have frozen out parties from the nomination process. Now, I don't know whether that's constitutional or not, but that's what you've done. Well, Your Honor, they cannot say on the ballot who is the Republican nominee. And Your Honor is getting to the point. There's not a constitutional right for them to say who's their nominee. Well, there isn't. To say who on the ballot, to say who's their nominee, they have a right. They have a private right to nominate who their candidate is going to be. Well, where are they going to do that? They don't. I mean, in the air? They can't do it on the ballot, so they're doing it in the air, in cyberspace, in the media?  They can communicate to their membership who their nominee is. And the Supreme Court has said that all of that is not a substitute for nomination. Endorsement is not a substitute for nomination. So how do they nominate? They can do it the exact same way the political parties did in this case. They nominated their Republican Party nominee and their Democrat nominee. What this boils down to is whether the parties have a constitutional right to demand that the abbreviation on the ballot not be the candidate's preference, but be the political party's preference. So let me ask you this question, then. In my hypothetical, W is David Duke, the Klansman. Yes, Your Honor. And he's relocated to Washington so that the Republican, one of the Republican-identified folks on the primary ballot will be a Klansman who is anathema to everything the Republican Party stands for. And there's no problem with that. The First Amendment guarantees people the right to free speech. And the Klansman case that you were talking about, Mr. Duke, those cases where he wanted to be on the Republican Party primary ballot for what was undisputably the Republican Party's presidential nominee in the election. The idea that the political parties have some constitutional right to act as roving truth squads to say whether someone really does prefer them or not is not supported by the First Amendment. It's all I'm saying. A possible counsel under Washington law for all positions to be filled by nonpartisan  It is, Your Honor, possible for that to be. And remember, the definition of partisans in this case is simply that you put on your declaration of candidacy that you prefer one party over the other. I realize I'm eating into the State's time now, so I probably should be quiet unless you all have some more questions. Okay. Well, we'll just keep them up with the State. Mr. Harris. Thank you. May it please the Court. Jim Harris from the Washington State Attorney General's Office. I'll continue probably where Mr. Ahern left off, because we essentially agree. To answer the question, I think it's true under Initiative 872, any candidate, C, M, W, any other candidate who files, who wants to say on their registration papers when they file, I prefer the Republican Party, that's the designation that will appear in the voters pamphlet and on the ballot. That's not, of course, the only way that people get information about who's running. How do people know from the State's standpoint, whatever the State puts out in the voter pamphlets, or obviously not on the ballot, but in the voter pamphlets, is there any distinction shown in the voter information materials published by the State that indicates that candidate C, who's the official Republican nominee per their nominating process, is different in Republicanism than the moderate or the David Duke type? As far as the voter's pamphlet is concerned, the candidates can place in the pamphlet whatever information they want. So I assume that candidate C will place there that he or she is the nominee of the Republican Party, and that will be in the voter's pamphlet. Presumably, the others will not, because they cannot truthfully do so. So that is one way that they can find out. I'm sorry. Would you say that again about what's on the voter pamphlet? Each candidate can place whatever information about their candidacy that they wish to in a section of the voter's pamphlet. So the candidate who is, has been selected by the Republican Party can and presumably would put that information in the voter's pamphlet, and presumably the others would not, since they couldn't truthfully do that. So that would be one way for people to find that out. Again, the other thing to point out, though, is that there is nothing in the Constitution that talks about political parties per se. They have an important historical role. But their constitutional rights here are essentially the right of any private organization to organize for any purpose, to participate in the political process to the extent they choose to, to engage in speech. And so just as there is no, it will not appear on the ballot if Mr. Ahern's client, the Grange, has endorsed a candidate, it will not appear on the ballot if the AFL-CIO has endorsed a candidate. But why is it, why would the initiative allow for the expression of a party, party preference unless it mattered? And it is a partisan office for which election is being sought. The initiative, however, has redefined the term partisan to a much more limited sense. And that is, I think, because you have to recognize partisanship exists. It's out there. People belong to parties. They organize parties. They're important. This is one bit of information that the voters can be given about a candidate, where the candidate can state, I prefer a particular political party. So, no, it's not irrelevant. There are probably other pieces of information that are also relevant. It's limited to what you can put on the ballot. The particular political party embraces that self-identification. Excuse me, I didn't hear the beginning of the question. Like, for example, whether the political party embraces the self-identification. I think that's probably relevant, too. The current law doesn't require that, but I don't think there's anything in the Constitution that says you have to provide the voters with all relevant information. We'd have quite a long book of a ballot if we did that. Does the state allow anybody to self-identify, say, as Grange, for example? David Duke decides to come in and be, he wants G after his name on the primary ballot. And the state prohibits, refuses to publish anything on behalf of the candidates other than their historical, maybe the biographical, but it doesn't permit them to say anything about their political bona fides. Would that be constitutional? I think the state has considerable leeway here to decide what is relevant and what will appear on the ballot. I'm, you know, I'm not exactly sure if they... What I'm driving at is the state have any obligation under the system that you're describing to provide a vehicle by which the owners of the name, Grange, Republican, Democrat, can dissociate themselves from people who self-proclaim themselves to be affiliated with them, even if they are not. Well, I guess I would start by saying I don't think they own the name, particularly generic terms like Republican and Democrat. Let me ask a question about that. There's a long history of party identification in this State. And part of the pre-initiative information was that the new ballot under the initiative would look the same as the old ballot, that it would not look any different to the voters under the initiative. And so how would you ask the question, again, it goes back to the question, how do people know the person for whom they're voting? I think just like they gain any other information about candidates and decide who to vote for. There's nothing that indicates that they have to know that particular piece of information. And in fact, of course, Washington just has 70 years of experience in which party identification has remained strong, even though we had a primary in which all voters could participate regardless of the designation of the candidates. So I don't think party strength is the issue here. And it seems to me all we have here is a system in which the State can allow the voters to have a little bit of information about people's party preferences. From then on, it's up to private groups, whether it's the Grange, the unions, the newspapers, the parties, to get out the information about who represents what sort of view and for the voters to decide who they're going to support. If the designation were the problem on the ballot, that is R, G, D, or whatever, and that were severed from the rest of the statute, would the statute, the initiative then still fulfill its function as the voters understood it? I think it would, Your Honor. I think if the only problem is that it appears on the ballot, I think the voters would happily give up that little element. How can we say that the voters would give up something as important as knowing at least who the candidates say they think like? Well, I think that's important, and the statute said so, too. But if you look at the initiative and if you think about whether the voters would prefer not to have that information on the ballot or to have to go back to the system that they voted out when they enacted initiative 872, I think you'll find, and I think Mr. A, you and I are in agreement, that severability is possible and important in that case. Because what the people don't want to do is have to throw the whole system out just because that one part is a problem. One more question, could I ask? Certainly. If we were to certify this to the Washington Supreme Court for resolution of some question that we thought was appropriate, is that something that you would be in favor of or not? I think I don't see that you need to do it. I think the Washington state law on things like severability is clear, but of course we would support that if the court thinks they need some information from the state courts. Thank you. Okay, Mr. McDonald first? Okay, Mr. White's going first. Good morning, I'm John White and I represent the Washington State Republican Party. Let me jump right in here now before it's too late. Does the Constitution actually grant political parties the right to select nominees? Both the Jones Court and the Reed Court recognize that under the First Amendment, political parties have the right to nominate their candidates, select their standard bearer, expressed under a number of different terms, but all leading to the basic point that the candidates who carry the political party name are representatives of the party and its positions. The state in initiative 872 provides expressly that the party identification for the candidate is for the information of the voters. The party does have the right to select a nominee, but does the Constitution require the states to incorporate the party's nominations into their election procedures? And if so, tell me where? If the state has partisan office, the answer is yes, because partisan office is by definition an office for which candidates have and express a political party affiliation. Assuming all that, where and what authority says that the states have to incorporate parties' nominations in their election procedures? If the state were to go to an entirely nonpartisan system of government, there would not be a requirement to print a party identification or a party nomination next to a candidate's name on the ballot. But Washington has not. And initiative 872 expressly rejected the notion that it was creating a nonpartisan system. Judge Nelson, you asked whether nonpartisan candidates would show on the ballot under initiative 872. I think the answer you got was incorrect. It's no. The nonpartisan candidates do not show. Instead, what the initiative says is that the party preference or independent status, not nonpartisan, but independent status, is reflected on the ballot. This is not a nonpartisan priority. As you noted in response to questions and answers posed to the Grange and answered by the Grange, the Grange said, no, this is not a nonpartisan process. Candidates are still going to designate their political party preference. All right. So given what Judge Nelson has focused on, then, in this process where the Republican Party has selected candidate C as their flag bearer through their off-ballot process, that is, they're not using the primary to select between C and M, it is your position what? That only C then comes on to the primary ballot with the letter R after his or her name? If under the political party's rules, C is the only candidate who is qualified to represent the Republican Party, the answer is yes. And you asked what constitutional authority there is for that. There's some general constitutional authority and then some very specific constitutional authority. With respect to the general constitutional authority, on the question of speaker autonomy and defining the scope of the association, you have the Hurley case and the Boy Scouts of America case. A little more detail, if you have the Jones case and this Court's prior decision in Reed, where the Court said that because Washington's former blanket primary prevented the political parties from selecting their nominees, it was unconstitutional. And then you have the David Duke cases and the LaRouche case from the District of Columbia Circuit and the Eleventh Circuit, where in both cases, those courts of appeals concluded that a candidate has no First Amendment right to force himself on an unwilling party. And with respect to David Duke, the Republican Party took a very strong position that David Duke was not within the scope of our association. And the Eleventh Circuit noted that the David Duke and his associates did not have the right to force themselves on the party. They could go form their own party. They could run as an independent. But they did not have the right to compel an association. And what the State is doing through the modified blanket primary under Initiative 872 is authorizing candidates to compel an association with the Republican Party on the State-sponsored ballots and in State-sponsored election. Ginsburg. I don't quite understand that. Can't the party just say this? He said his preference was Republican, but we don't consider him to be a true member of the Republican Party. And we can say that. But regardless of that, when people walk into the voting booth, they're going to see C, Republican, M, Republican, W, Republican. The two candidates who are not authorized, one of whom was specifically rejected and one of whom is not a member of the party at all, will have the same designation and the same association on the ballot. And the State is therefore and thereby compelling the Republican Party name to be a rejected candidate and with someone who is running for the specific purpose of being a problem for the Republican Party. Let me ask you one other question while I have the moment. You seem to say in your brief on page 45 that the initiative did not affect the candidates. Is that really correct? Do you have any evidence to support that? Yes, Your Honor. I think there are several things that support that. You have the sponsor's statements when the initiative was introduced. And I'll quote. This is ER 21 and 25. Minor parties would continue to select candidates the same way they do now under the blanket primary. Their candidates would appear on the primary ballot for each office as they do now, period, end quote. Now, the State and the Grange have urged that the statutes that provided for minor party convention rights and their ability to control their names were impliedly repealed by Initiative 872. We suggest that this is a somewhat late in the process realization that Initiative 872, in addition to invading First Amendment rights, also invaded equal protection because it left in place the ability of minor parties to control who could carry their banner, who could represent themselves as associated with those minor parties while denying the same thing to the Republican Party. In the Monroe case decided by the United States Supreme Court involving libertarians challenge to the 1 percent threshold that existed under prior law, the minor parties before Washington had adopted that 1 percent threshold had the right to nominate and have their candidates appear directly on the general election ballot. So there's nothing inconsistent with having a primary that sets a threshold for getting to the general election ballot with the existing statutory scheme that preserved for minor parties the ability to nominate and have that nomination mean something. So, again, equal protection fails as well as the First Amendment challenge. I just found nothing in the initiative that indicates that that would be so. Well, that's correct, Your Honor. And the reason you see nothing in the initiative is because the initiative was silent on the question of minor party convention rights. And under Washington law, implied repeal is disfavored. And where you have the sponsor explaining the purpose of the legislation from the minor party rights, we suggest that's very strong evidence against an implied repeal. Can I just make sure I understand what you're saying? That the minor parties can select their nominee by a convention process? That's correct. And that person goes on the primary ballot? That is correct. With the designation of G or? But that's what you're arguing. That is correct. I'm saying that there's nothing in the initiative and you're implying that the No, Your Honor. The existing Washington statutes that were in effect before initiative 872 expressly grant to minor parties convention rights, a sole candidate on the primary ballot, and an expedited court mechanism to strike imposters from the ballot. And those latter two, you say, are still operative? All of those are still operative because there is nothing in initiative 872 that Why can't somebody else come along and say, I want to, you know, the Grange has their candidate and I come along. The W decides you don't like the Republicans today. He likes the Grange for David Duke. And so he self-designates. They have two Grange people on. What's the difference? Well, Grange and the Republican Party then? If the Grange were a minor party, then when David Duke comes along and says, I'm a Granger, Washington statute provides an expedited court proceeding for the Grange to go to court and say David Duke is not within the scope of our association. We nominated G. But the statute doesn't require him to be nominated. That is, all it requires is that you can come on to the primary ballot, can't you, simply by paying a filing fee and fairly minimal stuff, and then you self-designate and you wind up on the ballot with Grange after your name. But not as a minor party candidate because of the preexisting statutes that say a minor party nominates by convention can put one candidate on the ballot. That's your repeal by implication argument. Well, and that's the State's argument, and that's disfavored. And if you take into account the express representations by the Grange when it introduced Initiative 872, we suggest that there is no support for implied repeal. I'd like to reveal at this point to Mr. McDonald. Thank you, Your Honors. I would, if I could, like to address some of the questions that have come up and put aside whatever. You're representing David Duke or the Democrats? David McDonald. I don't represent hamburgers, and I don't represent David Duke. I just thought, yeah, who are you representing? I do represent the Washington State Democratic Party.   some of the questions that have come up. If I could start with the minor party situation that we were just discussing, just to be sure that we're clear. There were statutes, and we believe that those statutes should still be in effect, that protected minor parties. And anybody could show up under those statutes and claim to be a second candidate of the minor party, but the minor party had the right to go to court and enjoin the use of their name within 10 days. It's a facial attack. Are we supposed to assume that there's no narrowing construction, even if it's a disfavored repeal by implication? That's how the district court. We're not asking you to assume anything. I don't think anybody has pointed to a narrowing construction. The narrowing is that they're just like the Republicans and Democrats. They can go through their nominating process. All the parties, major or minor, as I understand it, can go through a nominating process and select their nominee, their official nominee. But we've heard this morning that that doesn't mean that person is the sole owner on the ballot of the designation Democrat-Republican. So why would a minor party, absent of these pre-existing statutes, be in the same boat? In other words, they could have their nominee too, but anybody can come along and grab the designation in addition. If the state's position that the minor party nominating statutes have been impliedly repealed, if that position is upheld, then yes, minor parties are in exactly the same position as major parties. All political parties at that point face the proposition that although they nominate, although they exercise an undisputed right to nominate, somebody else comes along and This is in substance not any different than the parade case. As a political party, we field a team of candidates who articulate our message to the public, and the common thing they have is the word Democrat after their name. And what this statute, on its face, purports to do is to force us to let somebody else in our parade to purport to speak for us. And that was ruled unconstitutional in the Hurley case. This really is no different. The Supreme Court in Jones recognized and clearly held that the presence, the mere threat of the kind of voting pattern that goes on here was sufficient to force a message alteration, which was a severe burden. Judge Reimer, you look like you want to ask me a question. Would you have the same problem if a statute were to say that the official party designation could also appear on the ballot? I don't know whether it would be exactly the same problem. We would have a problem if there was a risk of confusion and if the statute encouraged sore loser candidates, spoiler candidates, and did not provide adequate protection for the use of our name, but it's a hypothetical that I can't address quite in the abstract. But it obviously would not be exactly the same because of the risk of confusion. I know it wouldn't. I just wondered whether that would solve the problem or exacerbate it. I believe, and I don't have the citation, I apologize, but I believe that there is a problem with allowing one class of candidates to have additional information on the ballot after their name than another class of candidates. I think that came up in the term limits case, and I'm not sure it would be constitutional to allow official candidates to say official and unofficial candidates to be some other designation. Okay. Then let me ask you sort of the opposite side of the problem. Would there be a problem if a State were to say, never mind the political parties, all our positions, not just judicial, not just education, are going to be nonpartisan? If the State were to convert its system to nonpartisan, this problem would not occur. I agree with you. However, this Court should not do what it's being asked to do, namely to convert by a stroke of its opinion the State to nonpartisan. In reference to the severance question, I think the State itself at page 36 of its brief summarized in one sentence the intent of this initiative. It says, the intent of initiative 872 is to conduct elections for partisan offices in the same manner as for nonpartisan while allowing candidates to have their political preferences on the ballot. If you were to strike out the party labeling, not only would you have to essentially cut out six sections of the initiative, as Judge Zilley found, but you would frustrate the statute. And that is not a proper severance under Washington law, and he was correct to refuse the invitation to do so. This is an odd case in which nobody disputes their right to nominate, despite the questions. When you read the briefs, there is no dispute. And I don't think there's any lack of clarity by the Supreme Court that a right to endorse is not the equivalent of a right to nominate. But what they want to do is convert our right to nominate into a right to endorse, something that has already been decided not to be constitutionally sound. And they could do that if they wanted to, as I understand it. You could have your nomination process, and then your official person would go into the You would be relegated to advertising, endorsing, whatever, because nobody would show up on the ballot with a party affiliation attached to his or her name. That would convert That would be a true nonpartisan Right. That would convert the system to nonpartisan, which the State of Washington could decide to do. But it has not decided to do that. In fact, it's gone exactly the other way. And just to, I want to try to stay within my time limit, but I want to close with a reference back to Mr. Ahearn's opening quotation. I think, sure, the voters understand the English language, but I think what's more important here is that all of us understand the difference between substance and form when it comes to constitutional rights. And the substance of this initiative, the substance of it on its face is to try to force parties to alter their message, to keep them from having an effective nomination right, to force associations on them by any self-starter, and just flagrantly a severe burden on our rights without even an attempt to justify it as advancing a compelling State interest. Thank you. Okay. Thank you, Mr. McDonnell. Mr. Shepard. My speech is three minutes, but I'll cut it down. I see I have 2.8. I'm Richard Shepard. I represent the Libertarian Party. I think I want to follow up first with a comment that dovetails into what Mr. McDonnell was just talking about, and that is this question of the State and this initiative redefining the word partisan. I think in a grand sense, we all know what that means. But what has happened here is that this statute artfully redefines it in such a way that, frankly, I don't think the public knows what has happened here. The public also passed term limits here in this State, if you recall, and that was held unconstitutional. And because it was an artful dodge, they had this thing where it was a valid access issue for incumbents. And what I'm suggesting to you is that this is an artful dodge, and it is just as constitutional as the artful dodge was in the term limits case. Now, insofar as the third parties are concerned, I will tell you that in my position, and it is my client's position, that 872 is a death warrant. I can't imagine any way that a Libertarian or a Green or a Socialist or whatever is ever going to make it to the general election ballot. This is unconstitutional because, as these folks have argued, it controls the message of the Libertarian Party. It gives us no way, no opportunity whatsoever to get rid of imposters who will dilute our message and who will disperse voter support for it. The result is that our historic 3 to 5 percent will never rise to 21 or 41 percent or whatever it is to come in second. It won't happen because there will be more than one Libertarian who may or may not bring the message in, at which point the public's vote will disperse and they don't have the coalescing ability of the Democrats and the Republicans. Look at what's happening in this year's Senate race. We've already got only two candidates, an incumbent and a challenger from some insurance company. The situation is just untenable for us. And I guess I'm out of time. I wish I had more time. I'm sure we understand your position and where you're coming from. We certainly understood, read the brief. So thank you very much. All right. Let's see if we have a bit of time left. Your Honor, I'd like to make one quick point. I told the State I'd use 45 seconds. The substance of this case boils down to whether voters understand what the word preference means. My football team preference is the Seahawks. There's not a single person in this room that thinks that means I'm a member of the Seahawks football team, that I'm affiliated or associated with the Seahawks. I think that's a good analogy. I think the issue, and it comes back to what the argument of Hurley does, is that you have a St. Patrick's Day parade and the Supreme Court has held that you can't and their identification by a group that wants to come in with a contrary message. And that's why my hypothetical included somebody who was a Republican, presumably sharing the same but moderate view, but somebody who's completely outside the parade. So how do you deal with the freedom of association established by Hurley? Because under the top two system, it is no longer the political party's parade. The election system in the State of Washington is everybody can run and everyone votes in the primary, and the top two winners, regardless of partisanship. That may be, but it's their parade in the primary. No, there is not. It's not a political party parade. It's determining the top two vote-gators, and that's it. The rest of my time. Then why have a political preference? To inform voters that the party that someone prefers. That doesn't mean that they're a member of. But it must matter. It, by definition, must matter. Otherwise, it wouldn't be there. And the political party's argument is the First Amendment gags anyone's right to tell the voters, I prefer the Republicans or the Democrats. Yeah, but the only gagging that's going on here is the parties. They're certainly being gagged. Parties aren't being gagged at all, Your Honor. They can nominate whoever they want. The question is whether the word preference means preference or whether it means membership or nomination, which is what the political party says. May I? I'm going to ask that. I feel really bad about your statement. It's time, though. It's all right. It's okay. What it amounts to is, assuming that the preference was severable, it would be completely a nonpartisan election. Isn't that correct? Well, Your Honor, again, we're getting caught up in what the word partisan means. Remember, the statute specifically defined partisan to simply mean that on your declaration you say, I prefer the Republican Party, and that preference appears on the ballot. You can sever the end, the preference appears. I understand your position. Thank you. Thank you, Your Honor. Thank you, Mr. Ferris. All right. Any further questions? Anything else? Okay. Thank you, counsel, all of you, for your helpful argument. The matter, I just argue, will be submitted.
judges: Dw Nelson, Rymer, Fisher